# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **FRANKLIN EDWARD SEEGERS,** | : | CIVIL NO. 1:18-CV-1343 |
| Petitioner | : | (Chief Judge Conner) |
| v. | : | |
| **WARDEN, USP ALLENWOOD,** | : | |
| Respondent | : | |

## MEMORANDUM

Presently pending before the court is a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 (Doc. 1), filed by petitioner Franklin Seegers ("Seegers"), an inmate confined at the United States Penitentiary, Allenwood, Pennsylvania ("USP-Allenwood"). Seegers contends that his due process rights were violated in the context of a disciplinary hearing held at the Federal Correctional Institution in Cumberland, Maryland ("FCI-Cumberland"). For the reasons set forth below, the court will deny the habeas petition.

## I. Background

Seegers is serving a 720-month sentence for drug trafficking, conspiracy to commit murder, and firearms offenses. (Doc. 8-1, at 3, Declaration of Michael S. Romano, Attorney Advisor for the Federal Bureau of Prisons ("Romano Decl."), ¶ 2; Doc. 8-1, at 7-13, Public Information Inmate Data).

In the instant petition, Seegers challenges disciplinary proceedings that were held at FCI-Cumberland in which he was found guilty of violating code 111A, attempted introduction of narcotics into the institution. (Doc. 1). Seegers contends

that he did not receive the incident report within twenty-four hours of the incident and the charges should have been dismissed because the case was not referred to the Federal Bureau of Investigations ("FBI") within twenty-four hours. (Doc. 1, at 3; Doc. 1-1, at 13-14). Seegers also claims that he was falsely accused and that the Discipline Hearing Officer ("DHO") was not impartial based on her alleged affiliation with a labor union for correctional workers. (Doc. 1-1, at 4, 8-12). Seegers asserts that there was insufficient evidence to demonstrate his involvement in a conspiracy to bring drugs into FCI-Cumberland, and that the drugs were not positively identified as suboxone by a qualified pharmacologist. (Id.) For relief, Seegers requests that the court vacate the incident report and sanctions imposed against him. (Doc. 1, at 4).

## II.     Discussion

On July 11, 2017, a staff member at FCI-Cumberland issued incident report 3008398. (Romano Decl. ¶ 3; Doc. 8-1, at 13, Incident Report, §§ 1-11). The incident report was initially suspended pending a referral to the FBI for criminal prosecution. (Romano Decl. ¶ 3). On July 28, 2017, incident report 3008398 was served on Seegers charging him with attempted introduction of narcotics into the institution, telephone abuse to further criminal activity, and conduct which disrupts the orderly running of the institution by using the mail to further illegal activity. (Doc. 8-1, at 15-22, Incident Report). The incident is described as follows:

> On July 11, 2017, at approximately 8:00 AM SIS staff concluded an investigation into the attempted introduction of narcotics orchestrated by inmates Seegers, Franklin #40510-133 and Wright, Gregory #03577-007 along with outside persons associated with the aforementioned inmates.

2

> . . .
>
> Based upon [several email and telephone] communications it was determined that inmate Seegers was going to be receiving 10 suboxone strips in his incoming mail. Throughout the conversations with outside persons both inmates Seegers and Wright use words referencing legal terms when in reality they are speaking about the suboxone strips. It is clear that inmate Wright sets the drug deal up with his outside person named "Hank" and who clearly supplies the 10 suboxone strips which is delivered to the outside person of inmate Seegers (Desmond). It should be noted that inmate Wright gives "Hank" the phone number of "Desmond" and tells him to get a hold of him. Inmate Seegers gives Desmond the phone of Hank and tells him to get a hold of him. This clearly shows that both inmates want their outside persons (Hank and Desmond) to meet up to exchange narcotics. Several emails were sent to Mail Room staff to be on the lookout for incoming mail addressed to inmate Seegers from the Washington, D.C. area and to forward them to SIS staff. Th[r]ough the inmate communications between Desmond and inmate Seegers, inmate Seegers is continually asking when the mail was sent out and when it should arrive here. Desmond states the letters were mailed Friday (June 30, 2017). In a phone call between Desmond and inmate Seegers on July 6, 2017, Desmond tells him he should receive that today or Friday (July 7, 2017). On July 10, 2017, at approximately 10:30 AM, Mail Room staff informed they received two incoming parcels addressed to inmate Seegers. At this time I proceeded to the Mail Room where I searched two envelopes addressed to inmate Seegers, Franklin #40510-133, which had a return address of Kion Jones 4300 12th St. SE Washington, D.C. 20032. The search of the two parcels revealed ten orange in color, buprenorphine (suboxone) strips with N8 written on them, which were concealed within the seam of the two envelopes. The orange in color strips were positively identified as buprenorphine (suboxone) by Health Services Staff. Based upon inmate communications with outside persons regarding the introduction of narcotics stating the exact amount of suboxone strips that were to be delivered through the mail to inmate Seegers, the same amount of suboxone strips recovered by SIS staff, and the narcotics being concealed in only a place the recipient would know where to look, it is concluded by this investigator that inmates Seegers and Wright colluded with outside persons to have narcotics introduced through the mail at FCI Cumberland.

(Doc. 8-1, at 15, 20-21, Incident Report).

The incident report was heard by the Unit Discipline Committee ("UDC") on three occasions because the DHO ordered the incident report to be rewritten to clarify dates, and the UDC required the Warden's approval for an extension of time to conduct its hearing. (Romano Decl. ¶ 3). On August 3, 2017, Seegers appeared before the UDC for a hearing. (Doc. 8-1, at 21, §§ 17-21). At the hearing, Seegers stated, "I didn't plot to do anything and the staff messed up." (Id. at § 17). The UDC referred the incident report to the DHO with a recommendation that sanctions be imposed. (Id. at §§ 18-20).

On August 3, 2017, and August 9, 2017, a staff member informed Seegers of his rights at the DHO hearing and provided him with a copy of the "Inmate Rights at Discipline Hearing" form. (Doc. 8-1, at 28, Inmate Rights at Discipline Hearing). Seegers was also provided with a "Notice of Discipline Hearing before the Discipline Hearing Officer (DHO)" form. (Doc. 8-1, at 26, Notice of Discipline Hearing before the Discipline Hearing Officer (DHO)). Seegers signed both forms, requested representation by a staff member, and elected to call witnesses on his behalf. (Doc. 8-1, at 26-28).

On August 18, 2017, a DHO hearing was conducted. (Doc. 8-1, at 31). During the August 18, 2017 hearing, the DHO confirmed that Seegers received advanced written notice of the charges, that he had been advised of his rights before the DHO, and that Seegers requested representation by a staff member and elected to call witnesses. (Id.) The DHO again advised Seegers of his rights, Seegers indicated

that he understood them, and that he was ready to proceed with the hearing. (Id.)
Regarding the charges, Seegers testified as follows:

> Inmate Wright came to me and asked if I was going back to court. His aunt testified against me and she was going to write a affidavit indicating this. I have been pressing him for a book of stamps I let him have. So I told him that when my cousin picks up the affidavit to just give him my ten dollars. I sell Feen pictures and my cousin gets them off the internet for twenty-five cents and I sell them for a dollar. He is really religious and wont call them Feen pictures so he call them whatshername. Hank is a jailhouse lawyer I said I wanted to see it first because I think he is hustling my cousin out of four hundred dollars.

(Doc. 8-1, at 31, § III(B)) (sic).

Seegers called two witnesses to testify on his behalf. A nurse testified that she did not identify the confiscated substance, but completed a medical assessment for the investigation. (Doc. 8-1, at 32, § III(C)(2)). A fellow inmate was called as a witness and stated: "I heard he got locked up for dealings with the mail. There are a lot of guys that send stuff in[to] other people and get them caught. They have been sending in all types of things like drugs." (Id.) The DHO found that neither witness assisted Seegers' defense because they lacked first-hand knowledge of the specific incident. (Doc. 8-1, at 40, § V).

In addition to the incident report and investigation, the DHO considered documentary evidence including two staff memoranda, a photo sheet, staff communication, and the FBI referral. (Doc. 8-1, at 32, § III(D)). The DHO explained that in order to find Seegers' denial of the offense to be credible,

> The DHO would have to believe that out of approximately 1400 inmates housed at FCI Cumberland, that an anonymous citizen arbitrarily selected [Seegers] to receive a two parcel envelopes [sic] containing a total of 10 strips of a narcotic. After this anonymous selection, the sender would have to hope that [Seegers] would discover

5

>the hidden narcotics inside the greeting card and know what there [sic] intended use was for. If all that happened, [Seegers] would be left with receiving narcotics through the mail, not knowing from whom or why. The DHO finds this scenario to be preposterous.

(Doc. 8-1, at 41).

After consideration of the evidence, the DHO found that Seegers committed the code 111A offense of attempted introduction of narcotics into the institution based on: (1) the written report by a lieutenant; (2) a staff memorandum that identified the orange strips as suboxone; (3) photographs illustrating the postage mark of July 7, 2017, the address on the envelope, the area of concealment within the envelope, and the orange transparent strip concealed within the seam of the envelope; and, (4) an email dated July 3, 2017 notifying staff of the suspicion of drugs entering the institution through the mail, specifically coming from the Maryland/Washington, D.C., area to contain ten suboxone strips addressed to Seegers. (Doc. 8-1, at 39-41, § V). As such, the DHO sanctioned Seegers with forty-one (41) days loss of good conduct time, fifteen (15) days disciplinary segregation, and loss of email and visiting privileges for one (1) year. (Doc. 8-1, at 41, § VI). At the conclusion of the hearing, the DHO advised Seegers of his appeal rights. (Id. at 42, § VIII).

Seegers' sanctions included the loss of good conduct time, therefore he has identified a liberty interest in this matter. Liberty interests protected by the Fifth Amendment may arise either from the Due Process Clause itself or from statutory law. Torres v. Fauver, 292 F.3d 141 (3d Cir. 2002). It is well-settled that "prison disciplinary proceedings are not part of a criminal prosecution and the full panoply

6

of rights due a defendant in such proceedings does not apply." Wolff v. McDonnell, 418 U.S. 539, 556 (1974). Nevertheless, the Supreme Court found that there can be a liberty interest at stake in disciplinary proceedings in which an inmate loses good conduct time. Id.

In Wolff, the Supreme Court set forth the following minimum procedural due process rights to be afforded to a prisoner accused of misconduct in prison which may result in the loss of good time credit: (1) the right to appear before an impartial decision-making body; (2) twenty-four hour advance written notice of the disciplinary charges; (3) an opportunity to call witnesses and present documentary evidence in his defense when it is consistent with institutional safety and correctional goals; (4) assistance from an inmate representative if the charged inmate is illiterate or complex issues are involved; and (5) a written decision by the fact finder of the evidence relied upon and the rationale behind the disciplinary action. Wolff, 418 U.S. at 563-67. The Supreme Court has held that the standard of review with regard to the sufficiency of the evidence is whether there is "any evidence in the record that could support the conclusion reached by the disciplinary board." Superintendent v. Hill, 472 U.S. 445, 455-56 (1985); see also Griffin v. Spratt, 969 F.2d 16, 19 (3d Cir. 1992). If there is "some evidence" to support the decision of the hearing examiner, the court must reject any evidentiary challenges by the plaintiff. Hill, 472 U.S. at 457.

The Bureau of Prisons' inmate disciplinary procedures are codified at 28 C.F.R. § 541, *et seq.*, and entitled: *Inmate Discipline and Special Housing Units*. These procedures are intended to meet or exceed the due process requirements

7

prescribed by the Supreme Court. See Von Kahl v. Brennan, 855 F. Supp. 1413, 1418 (M.D. Pa. 1994). Pursuant to these regulations, staff shall prepare an incident report when there is reasonable belief that a violation of BOP regulations has been committed by an inmate and the staff considers informal resolution of the incident inappropriate or unsuccessful. 28 C.F.R. § 541.5. The incident is then referred to the UDC for an initial hearing pursuant to § 541.7. The UDC "will ordinarily review the incident report within five work days after it is issued, not counting the day it was issued, weekends, and holidays." 28 C.F.R. § 541.7(c). This period may be extended if the incident is being investigated for possible criminal prosecution. 28 C.F.R. § 541.4(c). If the UDC finds that a prisoner has committed a prohibited act, it may impose minor sanctions. 28 C.F.R. § 541.7(f). If the alleged violation is serious and warrants consideration for more than minor sanctions, or involves a prohibited act listed in the greatest severity category, the UDC must refer the matter to a disciplinary hearing officer for a hearing. 28 C.F.R. § 541.7(a), (g). The inmate will receive written notice of the charge(s) against him at least twenty-four hours before the DHO's hearing, however the inmate may waive this requirement. 28 C.F.R. § 541.8(c). The inmate is entitled to have a staff representative, appear at the hearing, make a statement, present documentary evidence, and present witnesses. 28 C.F.R. §§ 541.8(d), (e), (f). Following the hearing, the inmate will receive a written copy of the DHO's decision. 28 C.F.R. § 541.8(h).

In the matter *sub judice*, it is clear that Seegers was afforded all of the required procedural rights set forth in Wolff. He received the incident report on July 28, 2017. He appeared before the UDC, where he provided a statement. He

was properly informed of his rights before the DHO hearing, as well as given the opportunity to make his own statement, present documentary evidence, have a staff representative, and to present witnesses on his behalf. At the conclusion of the hearing, Seegers received a written decision setting forth the evidence relied upon by the DHO and the rationale behind the decision. Seegers was also notified of his right to appeal.

Since Seegers was afforded all of his procedural rights, the only remaining issue is whether there was "some evidence" to support the decision by the DHO. The record clearly reveals the existence of evidence to allow the DHO to conclude that Seegers was guilty of the charge. The DHO determined that the greater weight of the evidence supported the finding that Seegers violated code 111A. In reaching her decision, the DHO considered memoranda from several staff members, the reporting officer's incident report, photographs, the address on the envelope, the area of concealment within the envelope, the orange transparent strip concealed within the seam of the envelope, the email notifying staff of the suspicion of drugs entering the institution through the mail, and the statements of witnesses. Based upon this evidence as relied upon by the DHO, the court finds that Seegers' due process rights were not violated by the determination of the DHO.

Finally, the court finds that all sanctions imposed by the DHO were within the limits of 28 C.F.R. § 541, *et seq*. Seegers was found guilty of a 100-level, greatest severity prohibited act. Pursuant to 28 C.F.R. § 541.3, the following are the sanctions available for 100-level prohibited acts:

A. Recommend parole date rescission or retardation.
B. Forfeit and/or withhold earned statutory good time or non-vested good conduct time (up to 100%) and/or terminate or disallow extra good time (an extra good time or good conduct time sanction may not be suspended).
B.1. Disallow ordinarily between 50% and 75% (27-41 days) of good conduct time credit available for year (a good conduct time sanction may not be suspended).
C. Disciplinary segregation (up to 12 months).
D. Make monetary restitution.
E. Monetary fine.
F. Loss of privileges (e.g., visiting, telephone, commissary, movies, recreation).
G. Change housing (quarters).
H. Remove from program and/or group activity.
I. Loss of job.
J. Impound inmate's personal property.
K. Confiscate contraband.
L. Restrict to quarters.
M. Extra duty.

28 C.F.R. § 541.3 (Table 1).

Thus, the sanctions imposed by the DHO in this instance were consistent with the severity level of the prohibited acts and within the maximum available to the DHO. Accordingly, the petition will be denied as to incident report number 3008398.

**III.** **Conclusion**

Based on the foregoing, the court will deny the petition for writ of habeas corpus.  An appropriate order shall issue.

        /S/ CHRISTOPHER C. CONNER
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania

Dated: June 6, 2019